IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.H., by her parents, M.R. and P.H., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:19-cv-01578-GJP |
| | : | |
| v. | : | |
| | : | |
| Saddlebrook Equestrian Facility, Inc., | : | |
| | : | |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT

Plaintiff E.H., by her parents, M.R. and P.H., brings this action against Defendant Saddlebrook Equestrian Facility, Inc. and in support thereof alleges as follows:

**I.     INTRODUCTION**

1.     Plaintiff E.H., a 13-year-old girl with a disability, brings this action against Defendant Saddlebrook Equestrian Facility, Inc. for violating Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §12182, by unlawfully refusing to allow her to take horseback riding lessons on the basis of her disability and thus denying her the full and equal participation in and enjoyment of its services and facilities provided at its equestrian center.

2.     Defendant's actions and inactions have caused Plaintiff to suffer serious harm and will continue to cause her harm in the future. To redress Defendant's past and continuing violation of her rights under federal law, Plaintiff seeks declaratory and injunctive relief.

**II.    JURISDICTION AND VENUE**

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343(a)(4) because the claims herein arise under federal civil rights law.

4. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §§ 1391(b)-(c) because Defendant resides in this district and because all of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this district.

### III. PARTIES

6. Plaintiff E.H. is a resident of Lansdale, PA. Plaintiff brings this action through her mother, M.R., and her father, P.H.

7. Defendant Saddlebrook Equestrian Facility, Inc., a Pennsylvania business corporation with a registered address of 4870 Skippack Pike, Schwenksville, PA 19473, operates the Saddlebrook Equestrian Center, which is located at the same address.

### IV. FACTUAL BACKGROUND

8. E.H. has been riding horses since she was three years old and has been receiving regular horseback riding instruction since 2008.

9. E.H. has agenesis of the corpus callosum, a brain condition that causes substantial limitations for E.H. with performing manual tasks, speaking in complete and full sentences, communicating, and interacting with others. For example, E.H.'s impairment causes substantial limitations with fine motor skills, including tying shoes and with legible handwriting. E.H.'s impairment also causes her difficulty with noting social cues, which substantially limits her ability to communicate and interact with others.

10. E.H. began riding horses and taking lessons at the Sebastian Riding Program ("Sebastian") in or about 2008, which is a therapeutic riding program for children and adults with disabilities.

11. In or about 2015, E.H. began taking horseback riding lessons with former instructors from Sebastian privately at various local farms and equestrian facilities.

12. Through private instruction, E.H. has continued to hone her horseback riding skills and her skill level now exceeds a therapeutic riding program level.

13. In her private instruction, E.H. has been riding horses off lead, i.e. maintaining full control of the horse without her instructor holding a lead or leash attached to the horse's reins, for approximately four years.

14. E.H. is able to control a novice horse through many basic riding skills.

15. E.H. rode in the 2014 Devon Horseshow with other riders with disabilities.

16. E.H. was interested in taking lessons at Defendant's facility, Saddlebrook Equestrian Center, because it has an indoor arena that would allow her to take lessons during the winter and in inclement weather.

17. E.H.'s parents, M.R. and P.H., went to visit Saddlebrook Equestrian Center in or about August 2018 to inquire about Defendant's riding program and to schedule E.H. for horseback riding lessons. During the visit, they met with Rosalyn Wolf, President of Saddlebrook Equestrian Facility, LLC.

18. During the meeting, M.R. and P.H. disclosed E.H.'s disability to Ms. Wolf and discussed E.H.'s horseback riding experience and history.

19. After M.R. and P.H. disclosed E.H.'s disability, Ms. Wolf expressed concerns to M.R. and P.H. regarding E.H.'s disability and told them that Defendant's insurance did not cover people with "problems."

20. Ms. Wolf told M.R. and P.H. that Defendant would schedule a lesson to evaluate E.H. and then let them know what they thought about E.H.'s abilities. She also indicated that she

would schedule the lesson at a slower time for the arena to limit distractions for E.H. and her instructor. The lesson was scheduled for October 7, 2018.

21. On October 7, 2018, E.H. arrived for her lesson with her parents.

22. Before the lesson, E.H.'s parents showed the instructor, whose name was Kim, videos of a E.H. during a lesson, which showed E.H. riding off lead and controlling the horse even in the face of distractions.

23. E.H. successfully completed her lesson without incident.

24. E.H.'s parents were present for and viewed E.H.'s entire lesson and did not observe any unsafe behavior on the part of E.H.

25. At the end of the lesson, E.H.'s parents attempted to discuss the lesson with Kim, but she informed them that she did not think she could teach E.H. because of unspecified "safety concerns." Kim then walked away and ignored further questions from E.H.'s parents about her concerns.

26. Another staff person, however, told M.R. and P.H. that E.H.'s lesson "looked great" and scheduled several more lessons for E.H.

27. Several hours before E.H.'s next lesson on October 21, 2018, E.H.'s parents received a call from Defendant's scheduler who asked if E.H. was still planning to come for her lesson. When her parents confirmed, the scheduler stated that Defendant did not think its insurance would cover any injuries to E.H. because it is "not safe" for her to ride there but they could discuss further when they arrived for the lesson.

28. When they arrived for the lesson, M.R. and P.H. were advised that after today's lesson Kim would no longer be working past 3:30 p.m. on weekends and that all of her future

lessons before 3:30 p.m. on weekends were booked.  As a result, E.H.'s parents were told that E.H.'s future lessons would have to be rescheduled.

29.     Defendant offered to reschedule E.H.'s lessons for weekdays but commented that "you're probably too busy or the lessons are too late for her."  However, E.H.'s parents rescheduled her lessons to meet Defendant's scheduling parameters.

30.     E.H. successfully completed her second lesson on October 21, 2018.

31.     Following the lesson, E.H.'s instructor told her that she had a great lesson.

32.     M.R. was present for and viewed E.H.'s entire lesson and did not observe any unsafe behavior on the part of E.H.  M.R. took a video depicting the successful lesson.

33.     E.H.'s next lesson was scheduled for October 25, 2018.

34.     On or about October 24, 2018, Defendant's stable manager, Andrew, called P.H. and stated that Defendant would need to cancel all of E.H.'s scheduled lessons because its insurance would not cover any injuries to E.H. and because she was an unsafe rider.

35.     Andrew claimed that he had observed E.H. at her lesson on October 21, 2018 and that he felt she was unsteady in her saddle and that she was distracted by birds in the indoor arena.

36.     Andrew did not speak with E.H.'s parents on the day of the lesson or at any time raise safety concerns before he called to cancel E.H.'s lessons.

37.     Despite multiple requests by E.H.'s parents to Defendant to allow E.H. to immediately resume horseback riding lessons, Defendant continued to refuse to allow E.H. to take horseback riding lessons at its facility.

38. On November 29, 2018, M.R. and P.H., through counsel, contacted Defendant by letter advising Defendant that its decision to deny E.H. lessons was discriminatory under the ADA and requested that Defendant allow E.H. to take lessons.

39. On December 20, 2018, a claims representative from Defendant's insurance contacted counsel for E.H. and confirmed that, notwithstanding Defendant's assertions to the contrary, Defendant's insurance policy did not contain an exclusion for people with disabilities or any other exclusion that would apply to E.H. if she took lessons at Saddlebrook.

40. Counsel was then contacted by Richard Wolf from Saddlebrook on December 20, 2018. Mr. Wolf abandoned his claim about the insurance policy, which, even if true would not have been excusable justification for discrimination, and instead asserted that E.H. could not take lessons due to "safety issues" relating to E.H.'s October 21, 2018 lesson, including the allegation that E.H. was distracted by a bird in the arena and an assertion that E.H. did not follow instructions.

41. On January 8, 2019, counsel informed Mr. Wolf that video taken by M.R. of E.H.'s October 21, 2018 lesson refuted any claim that E.H. was not following instructions or that there were any "safety issues."

42. Mr. Wolf then stated that Ms. Wolf would contact M.R. and P.H. to schedule riding lessons for E.H.

43. No representative of Defendant ever contacted E.H.'s parents to schedule lessons.

44. On January 31, 2019, M.R. and P.H., through counsel, sent another letter requesting that Defendant contact E.H.'s parents to schedule lessons for E.H.

6

45.    Instead, on or about February 5, 2019, Defendant proposed to allow E.H. to take lessons only with a PATH-certified instructor who was just hired and would not be certified until June 2019.

46.    PATH certification is a process for certifying instructors to provide instruction in a therapeutic horseback riding program for riders with disabilities.

47.    E.H. did not request and does not require a PATH certified instructor.

48.    Defendant's proposal denies E.H. equal access to Defendant's horseback riding services and unlawfully discriminates against her on the basis of her disability.

49.    In a further effort to resolve this dispute without the need for litigation, on February 8, 2019, counsel for E.H. advised Mr. Wolf that Defendant's proposal was discriminatory and again requested that he contact M.R. and P.H. to schedule lessons so that E.H. could immediately begin taking horseback riding lessons without the unlawful disability-based restriction.

50.    Defendant failed to do so and continues to unlawfully deny E.H. access to its services and facilities in violation of the ADA.

51.    E.H. continues to be interested in taking horseback riding lessons at Saddlebrook because its indoor facility would allow her to take lessons throughout the year regardless of season or weather.

52.    Defendant has violated and continues to violate the ADA by denying E.H. horseback riding lessons on the basis of her disability and/or by offering to provide her with a separate and unequal opportunity to participate in its services and facilities.

## VI.     CLAIM

### COUNT I
### VIOLATION OF TITLE III OF THE
### AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12182

53.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

54.     Plaintiff E.H. has an impairment, agenesis of the corpus collosum, which substantially limits her in the major life activities of performing manual tasks, speaking, communicating, and interacting with others.  As such, she is an individual with a disability as defined by the ADA.  42 U.S.C. § 12102

55.     Defendant Saddlebrook Equestrian Facility is a public accommodation as defined by Title III of the ADA.  42 U.S.C. §§ 12181(7)(I); (L).

56.     Title III of the ADA prohibits public accommodations, such as Defendant, from discriminating against individuals on the basis of disability in the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(a).

57.     Title III of the ADA, and its implementing regulations, prohibits a public accommodation from denying an individual, on the basis of disability, with the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations or affording an individual with a disability an opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations that is unequal to or separate or different than the opportunity provided to those without disabilities.  42 U.S.C. §§ 12182(b)(1)(A)(i)-(iii); 28 C.F.R. §§ 36.202(a)-(c).

58. Public accommodations may not require that "an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit available under this part that such individual chooses not to accept." 28 C.F.R. § 36.20(c)(1).

59. Defendant has discriminated against and continues to discriminate against E.H. in violation of the ADA by unlawfully denying E.H. the opportunity to participate in or benefit from its services and facilities on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i).

60. Defendant has discriminated against and continues to discriminate against E.H. in violation of the ADA by unlawfully affording E.H. with an opportunity to participate in or benefit from its services and facilities that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

61. Defendant has discriminated against and continues to discriminate against E.H. in violation of the ADA by unlawfully offering to provide E.H. with services and facilities that are different or separate from that provided to other individuals and which is unnecessary. 42 U.S.C. § 12182(b)(1)(A)(iii).

## VII. REQUEST FOR RELIEF

Plaintiff requests that this Court:

A. Declare that Defendant's actions and inactions violate the Americans with Disabilities Act.

B. Issue appropriate injunctive relief to enjoin Defendants to comply with their obligations under the Americans with Disabilities Act.

C. Grant Plaintiff such additional relief as this Court may deem just, proper, and equitable, including an award of reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 12205.

Dated: May 28, 2019

/s/ Rocco J. Iacullo
Rocco J. Iacullo, Esquire
riacullo@disabilityrightspa.org
Attorney I.D. No. 86144
Brynne S. Madway
bmadway@disabilityrightspa.org
Attorney I.D. No. 316422
Disability Rights Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 238-8070


Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

     I, Rocco Iacullo, hereby certify that a true and correct copy of Plaintiffs' First Amended Complaint was sent via U.S. First Class Mail and filed with the Court's Clerk via hand-delivery on May 28, 2019, which will be made available for viewing via the Court's ECF system for the following:

Katherine E. LaDow, Esquire
Guy A. Donatelli, Esquire
James C. Sargent, Jr., Esquire
Lamb McErlane, P.C.
24 East Market Street
PO Box 565
West Chester, PA 19381
kladow@lambmcerlane.com
gdonatelli@lambmcerlane.com
jsargent@lambmcerlane.com

                                                                /s/ Rocco Iacullo
                                                                 Rocco Iacullo